## PENNSYLVANIA RAILROAD CO. ET AL. *v.* UNITED STATES ET AL.

No. 182.   Argued January 11, 1945.—Decided January 29, 1945.

*Mr. Joseph F. Eshelman,* with whom *Messrs. R. Aubrey Bogley, Francis R. Cross, Wm. Pepper Constable, John Dickinson, H. C. Barron, Charles Clark, A. B. Enoch, P. F. Gault, Thomas P. Healy, H. H. Larimore, A. H.*

---

[4] See H. Rep. No. 708 (72d Cong., 1st Sess.), pp. 32–33; 75 Cong. Rec. 5693, 5694.

*Lossow, L. H. Strasser* and *Carson L. Taylor* were on the brief, for appellants.

*Mr. Robert L. Pierce,* with whom *Solicitor General Fahy, Assistant Attorney General Berge, Messrs. Walter J. Cummings, Jr., Daniel W. Knowlton* and *Edward M. Reidy* were on the brief, for the United States and the Interstate Commerce Commission, and *Mr. C. R. Hillyer* for D. A. Stickell & Sons, Inc., appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is an appeal from a decree [1] of a District Court of three judges dismissing the petition of the appellants, thirteen trunk line railroads, for an injunction annulling an order of the Interstate Commerce Commission,[2] which required the railroads to establish and maintain two through routes.

The Commission's order was made after hearing upon a complaint of D. A. Stickell & Sons, Inc., a manufacturer of mixed feeds at Hagerstown, Md. This concern obtains its inbound raw material of grain and grain products, etc., from manufacturing plants located in so-called central territory. These are mixed and the mixed aggregate moves from the plant at Hagerstown to points eastward, but principally to the so-called Del-Mar-Va Peninsula, a portion of Delaware, Maryland, and Virginia, which is served solely by the Pennsylvania Railroad. Hagerstown lies on the main line of the Western Maryland Railway. The Pennsylvania serves it by a branch line running from Harrisburg, Pa., to Winchester, Va., and the Baltimore & Ohio by a branch line running north from its main line at Weverton, Maryland. The railroads accord transit

---

[1] 54 F. Supp. 381.

[2] Stickell & Sons *v.* Alton R. Co., 255 I. C. C. 333.

facilities at Hagerstown whereby Stickell may receive the inbound materials, mix them, and ship the products to destination on a through rate plus a transit charge as if the movement had been a through one from origin to destination. The handling of freight moving over the Pennsylvania Railroad will illustrate the problem. The so-called back-haul, or out-of-line haul, required to reach Hagerstown from the Pennsylvania's main line is 74.5 miles in each direction and the additional charge for it is 4.5 cents per cwt., or about 17% of the through rate. Interchange and switching operations to reach the Stickell plant are performed by the Western Maryland and the Pennsylvania absorbs these charges. The Commission's order established two new through routes which included the Western Maryland, the line which serves the Stickell plant. Both reduced the Pennsylvania's line haul to that portion of the routes eastward of York, Pa., or Fulton Junction (Baltimore), Maryland, in respect of shipments to the Del-Mar-Va Peninsula, thus depriving the Pennsylvania of a long haul from points west of Pittsburgh, Pa., through Harrisburg, Pa.

The gravamen of Stickell's complaint before the Commission was that the back-hauls involved in existing routes delayed its shipments and, while the charge for such back-hauls was reasonable, the addition of this charge to the through rate cut into its margin of profit, which is small. These factors, it claimed, deprived it of its rightful competitive relation to other manufacturers of mixed feed.

The Commission's authority to grant relief is bottomed on § 15 (3) and (4) of the Interstate Commerce Act as amended.[3] The subsection first mentioned authorizes the Commission, when it deems it to be "necessary or desirable in the public interest" to establish through routes and

---

[3] 49 U. S. C. § 15 (3) (4).

joint rates. The succeeding subsection is a limitation on the Commission's power, derived in part from earlier enactments, prohibiting the Commission from requiring a line-haul carrier to short-haul itself as a participant in a prescribed through route. The earlier part of the paragraph retains the prohibition against short hauling but contains exceptions, one of which, designated (b), is "unless the Commission finds that the through route proposed to be established is needed in order to provide adequate, and more efficient or more economic, transportation: . . ." The principal controversy in the cause turns on the proper interpretation of the quoted exemption from the general prohibition of through routes which involve short hauling. There are certain subsidiary issues which will be noticed.

The opposing views of the parties may be summarized. The appellants argue that the phrase "adequate, and more efficient or more economic, transportation" refers to carrier operations and expense and has no reference to the broader public interest which embraces service to shippers and the rates they pay. The appellees urge that the phrase comprehends the adequacy of service, its cost to the shipper, and the convenience, efficiency, and cost of the carriers' operations. The Commission took the latter view. In its decision it purported to consider all these elements and, on appraisal of them, concluded the two routes it prescribed were justified by § 15 (4). The court below sustained the Commission. We think its judgment was right.

Without reciting in detail the statutory history, which is given in full in the opinion below, it will suffice to say that the Commission originally construed the short-haul provision of the Interstate Commerce law as protecting only the haul of the originating carrier. In *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269, this construction

was overruled. Decision was handed down after the Commission had made an order on an earlier complaint of Stickell, similar to the order here involved;[4] but, after this court's decision, the Commission set aside the order in conformity to our opinion. Several unsuccessful attempts were thereupon made to induce Congress to repeal the short-haul prohibition. When the 1940 amendment to the Interstate Commerce Act was on its passage, the short-haul prohibition was eliminated by the Senate. The House retained the provision without change.

In conference § 15 (4) was amended by permitting the Commission to require a carrier to short-haul itself under the conditions specified in the language we have quoted. Thus the two sections—15 (3) and (4)—since 1940 have provided that the Commission may establish a through route if found to be "in the public interest" but may not establish such a route which requires a carrier to short-haul itself unless it finds that the route will provide adequate, and more efficient or more economic, transportation. The appellants suggest that if the latter phrase be construed as the Commission has construed it the two sections taken together will be redundant for subsection (3) permits the establishment of a through route only if it is in the public interest, and the short-haul provision may be disregarded only if so to do would be in the public interest. But we think this is not a fair construction of the statute. It is conceivable that the Commission might refuse to establish many through routes as not required in the public interest where short hauling is not involved. On the other hand, if the Commission is asked to abrogate the general rule with regard to the short-haul, the statute says it must have regard to several matters. The first of these is adequacy of transportation. The expression would seem to apply only to the interest of the

---

[4] Stickell & Sons *v*. Western Maryland R. Co., 146 I. C. C. 609.

shipping public. The second and third matters to be considered are efficient and economic transportation. These expressions may well embrace both shippers' and carriers' interests. Congress had a purpose in amending the provision, and we think the Commission was not in error in construing the language used as evincing an intent that both interests should be considered and a fair balance found.

The appellants refer to legislative history, to the policy declared in the Interstate Commerce legislation, to the definition of transportation in the statute, and other aids to construction, in support of their argument. These were, in our view, adequately discussed by the court below. We have considered them but they do not persuade us that the Commission and the District Court were wrong in their interpretation of § 15 (4).

The appellants contend that even if the Commission was right in its interpretation of its statutory authority, its over-all conclusion is not supported by evidence or by the subsidiary findings. The claim is that the Commission did not make findings that the expense and inconvenience to the carriers concerned of rendering services over routes involving four, five, or six railroads, with the consequent interchange of traffic, would not be inordinately expensive and burdensome, and they point to certain evidence offered before the Commission which they say the Commission ignored. In the court below the same contention was considered and overruled. True, the Commission's findings are not sharp and clear on the point, but the matter was not ignored and the Commission's decision refers to it. We are unable to say that there was not sufficient in the record before the Commission, and in its findings, to justify the conclusion that the Commission, as it says it did, weighed the evidence and found that the balance was in favor of the order made.

*Judgment affirmed.*